**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | |
|---|---|
| **MICHAEL HAGSTRAND**, | Case No. 3:12-cv-0511-SI |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| **CAROLYN W. COLVIN**,[1] Acting Commissioner of Social Security, | |
| Defendant. | |

Merrill Schneider, Schneider Kerr Law Offices, P.O. Box 14490, Portland, OR 97293. Attorney for Plaintiff.

S. Amanda Marshall, United States Attorney, and Adrian L. Brown, Assistant United States Attorney, United States Attorney's Office, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204-2902; Jordan D. Goddard, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Attorneys for Defendant.

---

[1] Subsequent to the filing of the Complaint in this case, the term expired of Michael J. Astrue, the named defendant Commissioner of Social Security, and, thus, the name of the current acting Commissioner has been substituted in the caption.

SIMON, District Judge.

Michael Hagstrand seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits. For the following reasons, the Commissioner's decision is AFFIRMED.

## BACKGROUND

### A. The Application

Mr. Hagstrand is a 65-year old gentleman whose work history in the fifteen years before the onset of his alleged disability includes two years as an addiction counselor, approximately two and one-half years as a school custodian, a few months as a sales associate in a home improvement store, approximately nine months as a construction worker, and approximately six and one-half years a general contractor. AR 121. Mr. Hagstrand received a Bachelor of Science in Religious Education and has a certificate from the Steamfitter's Apprenticeship in New York, Local 638. AR 34.

Mr. Hagstrand protectively filed an application for Disability Insurance Benefits ("DIB") on October 6, 2009, alleging disability beginning on November 15, 2006.[2] AR 10. He alleges disability due to left knee and left ankle arthritis and alleges that he has great difficulty navigating stairs and ladders and uneven terrain. AR 120. The Commissioner denied his application initially and upon reconsideration; thereafter, Mr. Hagstrand requested a hearing before an Administrative Law Judge ("ALJ"). AR 54-58, 62-65, 66-67. An administrative hearing was held on April 14, 2011, at which Mr. Hagstrand testified. On April 27, 2011, the ALJ found Mr. Hagstrand not disabled. AR 10-20. The Appeals Council denied Mr. Hagstrand's

---

[2] He initially filed alleging disability beginning December 31, 2002, but at the hearing he amended his application to allege a disability onset date of November 15, 2006. AR 10, 106.

OPINION AND ORDER, Page 2

request for review, making the ALJ's decision the final decision of the Commissioner. AR 1-6. Mr. Hagstrand now seeks judicial review of that decision.

## B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.,* 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. § 404.1520 (DIB); 20 C.F.R. § 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so,

then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds beyond step three. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel,* 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert,* 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett,* 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant

OPINION AND ORDER, Page 4

numbers in the national economy, the claimant is not disabled. *Bustamante,* 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

The ALJ began his opinion by noting that Mr. Hagstrand met the insured status requirements of the Social Security Act through March 31, 2007. AR 10. The ALJ further noted that Mr. Hagstrand must establish disability on or before that date in order to be entitled to a period of disability and disability benefits.[3] *Id*. Because the alleged disability onset date is November 15, 2006, the period at issue for determining disability is November 15, 2006 through March 31, 2007.

The ALJ applied the sequential process. AR 11-20. At step one, the ALJ found that Mr. Hagstrand had not engaged in substantial gainful activity during the period at issue (from the alleged disability onset date of November 15, 2006, through the date last insured of March 31, 2007). AR 12. At step two, the ALJ found that Mr. Hagstrand's diabetes mellitus and his history of ankle repair in 1998 and 2001 were severe impairments. *Id.* At step three, the ALJ found that

---

[3] Section 423 of the Social Security Act establishes the statutory eligibility requirements to receive a disability insurance benefit, requiring, among other things, that the applicant be considered "insured," which involves a calculation of the number of quarters employed within a certain time frame. 42 U.S.C. § 423. The Ninth Circuit has held "that an individual cannot receive disability benefits for a recurrence of a disability, after a period of medical improvement when the individual was no longer disabled under the Act, unless the individual can establish that the *current* period of disability began on or prior to the expiration of insured status." *Flaten v. Secretary of Health & Human Services*, 44 F.3d 1453, 1458 (9th Cir. 1994) (emphasis in original). Thus, if an individual applies for benefits after the expiration of insured status (as is the case with Mr. Hagstrand), if the claimant was not disabled on the last day of insured status, then the claimant cannot recover disability benefits for a new period of disability, "even if the claimant suffers a recurrence of the same disability from which the claimant suffered during a time when the claimant [was insured]." *Id.* Any deterioration in condition after that time is irrelevant. *Id.* at 1461 n.4 (quoting with approval *Waters v. Gardner*, 452 F.2d 855, 858 (9th Cir. 1971)).

Mr. Hagstrand did not have an impairment or combination of impairments that met or equaled one of the specific impairments listed in the regulations. AR 14.

The ALJ then determined that during the period at issue, Mr. Hagstrand had the RFC to perform the full range of medium work. AR 14-19. In reaching this conclusion, the ALJ considered Mr. Hagstrand's testimony, but found that it was not fully credible to the extent it conflicted with the ALJ's RFC assessment. AR 15-18. The ALJ noted that the Disability Determination Services medical consultants indicated that there was insufficient medical evidence to adjudicate Mr. Hagstrand's claim, but the ALJ found that the medical records support a finding of full range of medium work. AR 18.

The ALJ gave little weight to three reports by Dr. Richard W. Craft, Sr., Mr. Hagstrand's treating physician because they were vague, not fully supported by Dr. Craft's treatment records, not limited to the relevant time period, not supported by medical findings, and inconsistent with other evidence in the record. AR 18-19.

At step four, the ALJ found that Mr. Hagstrand was able to perform his past relevant work as a school custodian as he actually performed it. AR 19. Based on the finding that Mr. Hagstrand could perform his past relevant work, the ALJ concluded that Mr. Hagstrand was not disabled. AR 19.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.,* 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir.

OPINION AND ORDER, Page 6

1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (internal quotations omitted)). The reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray,* 554 F.3d at 1226.

## DISCUSSION

Mr. Hagstrand seeks review of the determination by the ALJ that Mr. Hagstrand is not disabled. Mr. Hagstrand argues that the ALJ erred in making that determination by: (1) improperly finding Mr. Hagstrand's subjective symptom testimony not fully credible; (2) improperly rejecting the opinion of Dr. Craft, a treating physician; and (3) improperly formulating an RFC by failing to perform a function-by-function analysis of Mr. Hagstrand's abilities and limitations, as is required by Social Security Ruling ("SSR") 96-8P.

### A.  Mr. Hagstrand's Credibility

The Ninth Circuit has developed a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether

the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*)). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any

medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96-7p, *available at* 1996 WL 374186.

Further, the Ninth Circuit has said that an ALJ also "may consider . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

Mr. Hagstrand's disability claim is based on ankle and knee pain. The ALJ found that Mr. Hagstrand's diabetes mellitus and ankle repair history are severe impairments. AR 12. The ALJ specifically found that the left knee pain, which Mr. Hagstrand alleges contributes to his disability, was not supported by objective medical evidence and did not result in a severe impairment during the relevant time period. AR 12-13. The ALJ also noted that there is insufficient medical evidence of the other symptoms and complaints that appear from time to time in the medical record, including depression, anxiety, back pain, hepatitis C, hypothyroidism, hypertension, and hyperlipidemia to show that they are more than transient or caused significant vocational limitations during the relevant time period. AR 13-14. It does not appear that Mr. Hagstrand relies on any of these conditions as contributing to his disability, nor did he

provide much testimony relating to these conditions (other than back pain) at the hearing. To the extent Mr. Hagstrand is relying on these conditions to support his claim of disability, the record supports the ALJ's determination that Mr. Hagstrand has not presented objective medical evidence of these impairments nor that they could reasonably be expected to produce the pain or other symptoms alleged. *Lingenfelter*, 504 F.3d at 1036.

Mr. Hagstrand testified at the hearing relating to his knee, back, and ankle pain and his limitations caused by those issues. AR 36-37, 39-42, 44-45. Mr. Hagstrand alleges that the ALJ did not provide clear and convincing reasons for finding Mr. Hagstrand's subjective symptom testimony not fully credible. The ALJ found that Mr. Hagstrand's testimony concerning the intensity, persistence, and limiting effects of the symptoms was not credible to the extent those statements are inconsistent with the ALJ's RFC determination. AR 15. Notably, much of Mr. Hagstrand's testimony at the hearing is consistent with the ALJ's RFC determination.

Mr. Hagstrand testified at the hearing that he had two ankle surgeries, one in 1998 and one in 2001. AR 39. The second surgery was to remove the steel plate that was installed in the first surgery. AR 40. When asked if the second surgery helped, Mr. Hagstrand replied "yes, absolutely." AR 40. For the time period 2005 and 2006, Mr. Hagstrand testified that his ankle would give him problems when he walked on construction sites with uneven ground and debris and other items laying around if his ankle "shift[ed] from the vertical in any way it would flare-up." AR 40. This would cause a sharp pain and swelling and he would be forced to rest his ankle, sometimes for days. AR 40. This testimony is consistent with the ALJ's assessment that Mr. Hagstrand could work as a school custodian, which does not involve walking on uneven ground with significant construction debris. Additionally, when asked if his ankle pain would

OPINION AND ORDER, Page 10

have been a problem while sitting down in March of 2007, Mr. Hagstrand replied that it "could" at times, depending on temperature and humidity. AR 45 He also testified that if his ankle got cold during the day it would take hours to heat up and if he was not able to keep it warm it would be aggravated and would interrupt his sleep. AR 45. This testimony does not support a debilitating disability related to Mr. Hagstrand's ankle injury and does not contradict the ALJ's RFC determination.

Relating to his knee pain, Mr. Hagstrand testified that he had a knee injury in the mid-70s and knee surgery in 1980 and again in 1981. AR 41-42. He testified he had arthritis in his left knee and that particularly on cold, wet days he would get swelling and weakness in the knee. AR 42. He also testified that he had grown accustomed to his knee pain. AR 45.

Relating to his back pain, Mr. Hagstrand testified that his back pain caused problems when sitting for lengthy periods of time and caused him to change his job from a drug and alcohol counselor to one in which he could stand more frequently. AR 38. Mr. Hagstrand never had back surgery and does not consider himself to have a "major back injury" but instead to have "bad wear and tear" and disk problems, which he has had for 25 years. AR 42. He has seen chiropractors, but, he reports, "fortunately" he has not had to see one for at least the past six years, which encompasses the time period at issue. AR 42.

Mr. Hagstrand's specific testimony relating to his knee, back, and ankle pain is not inconsistent with the ALJ's RFC assessment. To the extent it could be considered inconsistent, the ALJ provided sufficient reasons for finding it not credible, as discussed below.

There was, however, some testimony by Mr. Hagstrand relating to his limitations that was inconsistent with the ALJ's RFC assessment. He testified that he could only be on his feet

OPINION AND ORDER, Page 11

for two to two and one-half hours, would need to take a thirty minute break, and then could be on

his feet for another two hours. AR 41. He testified that he could sustain that level of activity for

only three weeks or so before he would need to take anywhere from two days to a week off to

recover. AR 41. He also testified that he could sit in one place for a couple of hours at a time.

AR 44.

In evaluating the credibility of Mr. Hagstrand's testimony, the ALJ, applying the first

step of the credibility framework, found "that the claimant's medically determinable impairments

could reasonably be expected to cause the alleged symptoms[.]" AR 15. In applying the second

step, however, the ALJ concluded that Mr. Hagstrand's "statements concerning the intensity,

persistence and limiting effects of these symptoms are not credible to the extent they are

inconsistent with the [RFC] assessment." *Id.* In support of this credibility finding, the ALJ

offered several specific reasons: (1) the inconsistency between the testimony and the reported

activities during the relevant time period, as reported by Mr. Hagstrand and his wife; (2) the

disparity between his hearing testimony and the relevant medical evidence; and

(3) Mr. Hagstrand's failure to comply with medical advice or seek treatment. AR 15-18.

### 1. Activities reported

Daily activities can form the basis of an adverse credibility finding where the claimant's

activities either contradict his or her other testimony or meet the threshold for transferable work

skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn*, 495 F.3d at 639. For a

credibility analysis, the ALJ "need not consider whether a claimant's daily activities are

equivalent to full-time work; it is sufficient that the claimant's activities 'contradict claims of a

totally debilitating impairment.'" *Whittenberg v. Astrue*, Civil No. 3:11-cv-00475-AC, 2012 WL

3922151 at * 4 (D. Or. Aug. 20, 2012) (quoting *Molina*, 674 F.3d at 1113); *see also Denton v.*

OPINION AND ORDER, Page 12

*Astrue*, No. 3:11-cv-01066-SI, 2012 WL 4210508 at * 6 (D. Or. Sept. 19, 2012) ("While

[claimant's] activities of daily living do not necessarily rise to the level of transferable work

skills, they do contradict his testimony regarding the severity of his limitations."). A claimant,

however, need not be utterly incapacitated to receive disability benefits, and sporadic completion

of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter*,

260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir.

1998) (requiring the level of activity to be inconsistent with the claimant's claimed limitations to

be relevant to his or her credibility).

Mr. Hagstrand testified that he did not actively pursue jobs after 2004, he did some work

in 2005 but recorded a loss, and after that "was pretty much done." AR 35. Mr. Hagstrand

reported greater activity to his physician than his hearing testimony indicates. On November 11,

2005, he reported "doing a lot of work on insulation." AR 205. On November 16, 2007, he

reported "doing a lot of work lately." AR 197. Mr. Hagstrand testified at the hearing that his

reference to doing a lot of work in November 2007 was "probably my work around the house,"

including yard work, cleaning, and remodeling. AR 46. Regardless of whether the volume of

work he reported in 2007 was at his house or as a contractor, it suggests, as the ALJ found,

greater abilities around the time of his date last insured than Mr. Hagstrand claims.

Additionally, in a report completed on November 14, 2009, more than two and one-half

years after the date last insured, Mrs. Hagstrand reported on her husband's activities and

limitations. She reported that he remains able to perform self-care activities independently,

prepares his meals daily, goes outside daily, performs household chores—including

vacuuming—without any need for help, babysits his two young grandchildren two to three days

a week and drives them to school, drives independently, goes grocery shopping, engages in weekly baking, golfs one or two times per month, goes out for meals, and leads bible study. AR 135-39. She also reported that his walking ability varies with terrain, he has difficulty walking uphill, that he finishes what he starts, he has no difficulty with concentration, and he has no difficulty handling stress. AR 139-41.

Although not cited by the ALJ, Mr. Hagstrand also completed a daily activity living report on November 13, 2009.[4] This report indicates his self-reported abilities as of the date of the report, so it is not greatly instructive as to his activities and limitations as of March 31, 2007, but it does show some inconsistency with his testimony at the hearing. In the report, Mr. Hagstrand states that he cleans the house daily for two hours, does the laundry twice a week for two hours, cooks daily for two to three hours, and handles household repairs as needed. AR 129. His statement that he cleans and cooks daily for four to five hours contradicts his testimony that he could only be on his feet four to five hours daily for two to three weeks before needing a break of a few days to a week.

The written records of daily living and contemporaneous reports of activities to physicians, even if they do not rise to the level of transferable work skills, are inconsistent with a completely debilitating impairment. *Molina*, 674 F.3d at 1113.

---

[4] The Court is not permitted to affirm the Commissioner on a *ground* upon which the Commission did not rely, but the Court is permitted to consider additional support for the ALJ's position. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1005 n.3 (9th Cir. 2006). Here, the ALJ based his credibility determination, in part, on the ground that Mr. Hagstrand's testimony contradicted reports in the record of daily living and activities and this Court may consider additional records other than those specifically cited by the ALJ in considering that ground.

OPINION AND ORDER, Page 14

### 2.   Inconsistency with reports to treating physicians at the time and failure to report symptoms

The ALJ also found Mr. Hagstrand's subjective testimony regarding his symptoms not credible because it contradicted reports that he made to treating physicians and because he did not complain of knee or ankle pain in and around the relevant time period. AR 16-17. A claimant's inconsistent or non-existent reporting of symptoms is competent evidence for an ALJ to consider when making a credibility assessment. *See Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006).

Mr. Hagstrand visited his physician several times from November 11, 2005 through November 16, 2007, and at no time did he complain of knee or ankle pain during those visits. AR 197-205. Of particular importance, on November 27, 2006, less than two weeks after the alleged onset of disability, Mr. Hagstrand visited Dr. Craft and complained of facial and sinus pain, without any mention of knee, ankle, or back pain. AR 203. Less than a month later, on December 11, 2006, Mr. Hagstrand reported that he "is feeling all right." AR 202. And on April 3, 2007, only a few days after the last insured date, Mr. Hagstrand visited Dr. Craft and complained of not feeling well in general, and they discussed at length Mr. Hagstrand's noncompliance with his diabetes treatment. AR 201. Again, there was no discussion of musculoskeletal pain. A few months later, on July 3, 2007, Mr. Hagstrand reported "feeling fairly well in general." AR 200. On November 16, 2007, Mr. Hagstrand complained of pain in the right part of his neck and his right arm and some fingers in his right hand. AR 197. He noted that the had been "doing a lot of work lately." *Id*. Although November 16, 2007 is eight months after the last insured date, it is instructive that Mr. Hagstrand complained that doing a "a lot of work" caused him pain and failed to mention any knee, ankle, or back pain. This report to his

physician is contradictory to Mr. Hagstrand's disability claim because it shows that he could do "a lot of work" after the alleged disability date, it indicates that doing such work caused neck and arm pain, but not ankle or knee pain, and it indicates that Mr. Hagstrand did complain to his physician regarding musculoskeletal pain, and there were no such complaints made during visits to his physician in and around the time period at issue.

### 3. Failure to seek treatment or comply with medical advice

The ALJ also found Mr. Hagstrand's complaints not credible because he failed to seek treatment for some of his alleged complaints and failed to follow his physicians' treatment advice for others. AR 16-18. An ALJ may consider a claimant's failure to follow a prescribed course of treatment when weighing a claimant's credibility. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039-40 (9th Cir. 2008) (quoting *Smolen*, 80 F.3d at 1284) (The ALJ may consider "unexplained or inadequately explained failure . . . to follow a prescribed course of treatment.") (internal quotations omitted); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995).

In February 2004, Mr. Hagstrand suffered a fall that affected his left knee and, to a lesser degree, his left ankle. AR 208. He was sent for x-rays and instructed to elevate his leg, use ice packs, and use over-the-counter medication. AR 208. Dr. McGowan (who appears to be part of Dr. Craft's medical practice) suggested an orthopedic follow-up. There is no evidence, however, that Mr. Hagstrand pursued any orthopedic follow-up. There is also no evidence that Mr. Hagstrand followed up with Dr. Craft for any pain or difficulty as a result of this fall. Mr. Hagstrand's next visit with Dr. Craft was on April 20, 2004, in which he reported doing "okay" and the focus of the visit appears to have been his lack of compliance with his diabetes medication. AR 207. Dr. Craft's notes do not indicate any discussion of knee or ankle pain.

OPINION AND ORDER, Page 16

Additionally, on December 11, 2008 (more than eighteen months after the last insured date), Mr. Hagstrand complained of left ankle pain, but he refused an orthopedic consult and to partake in physical therapy. AR 194.

Mr. Hagstrand argues that Dr. Craft opined that Mr. Hagstrand did not seek medical treatment for his ankle because Mr. Hagstrand figured there was not much that could be done. Plf. Br. at 12. This is argument is unavailing for several reasons. First, it is Dr. Craft's opinion of Mr. Hagstrand's motivations—Mr. Hagstrand did not testify as such. Second, Mr. Hagstrand testified that his second ankle surgery "absolutely" provided relief (AR 40), and there is no evidence in the record that he attempted other treatments that did not provide relief, so there is no substantiation for the theory that he believed during the relevant time period that seeking medical treatment would be fruitless. Third, Mr. Hagstrand did seek medical treatment for musculoskeletal issues with his neck and arm in November 2007, but did not seek medical treatment for musculoskeletal issues with his ankle until 2008 and 2009. This provides support that he sought treatment when it was needed, and that his ankle and knee problems were not severe enough to require treatment during the relevant time period.

Mr. Hagstrand has a well-documented history of refusing to take his medication and follow his doctor's prescribed course of treatment for nearly all of his medical issues for more than seven years. *See* AR 189-210. It was proper for the ALJ to consider this conduct in assessing Mr. Hagstrand's credibility. *See Tommasetti*, 533 F.3d at 1039–40

The ALJ offered clear and convincing reasons supported by substantial evidence in finding that Mr. Hagstrand's subjective symptom and limitation testimony regarding his symptoms as of March 31, 2007 was not credible. Thus, the ALJ's credibility finding is affirmed.

OPINION AND ORDER, Page 17

**B.  Dr. Craft's Opinions**

The ALJ gave little weight to three of Dr. Craft's reports, finding that: (1) the November 12, 2009, chart notes of Dr. Craft relating to the duration of the ankle issues are vague and not fully supported by his treatment records during the relevant time period and other evidence in the record; (2) the January 29, 2010, letter by Dr. Craft appears to discuss Mr. Hagstrand's abilities and functionality as of that date and not as of the time period at issue and is inconsistent with other evidence in the record; and (3) the April 12, 2011, questionnaire completed by Dr. Craft is a check-box form that does not include objective findings to support its conclusions and it is inconsistent with Dr. Craft's treatment notes from around the relevant time period. AR 18-19.

An ALJ must determine the weight to give each source of evidence. 20 C.F.R. §§ 404.1527(d), (f), 416.927(d), (f). Opinions from "acceptable medical sources" may generally be accorded more weight than those from "other sources." *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996). An ALJ may wholly or partially discount the opinion of any source, but the regulations and Ninth Circuit case law establish specific standards that an ALJ must apply in order to do so. *See* 20 C.F.R. §§ 404.1527, 416.927 (standards for evaluating medical opinions); *Lester v. Chater*, 81 F.3d 821, 830–33 (9th Cir. 1995) (standards for evaluating acceptable medical sources); *Dodrill*, 12 F.3d at 918–19 (standards for evaluating other sources). An ALJ may only reject the uncontradicted opinion of a treating or examining doctor if the ALJ states "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

Dr. Craft treated Mr. Hagstrand since approximately 1999. AR 188. As discussed above, Dr. Craft treated Mr. Hagstrand for various issues in and around the relative time period, and in

OPINION AND ORDER, Page 18

none of those visits was ankle or knee pain identified as a problem. Mr. Hagstrand did not

identify his ankle pain as a problem until September 2008. AR 195. Mr. Hagstrand then

continued to complain about some level of discomfort from his ankle from 2008 through 2010.

AR 189-195. The ALJ, however, can only consider symptoms and limitations from the relevant

time period (November 15, 2006 through March 31, 2007) in determining whether a disability

was present while Mr. Hagstrand had insured status. *Flaten v. Secretary of Health & Human*

*Services*, 44 F.3d 1453, 1458 (9th Cir. 1994), 44 F.3d at 1458-59, 1461. Thus, even if his

symptoms became debilitating sometime between 2008 and 2010 (which the medical records do

not support),[5] they are not relevant to the determination of whether he was disabled as of the date

last insured. *Id*.

     Mr. Hagstrand does not allege Dr. Craft's chart notes are incomplete or inaccurate. The

contemporaneous medical notes in and around the relevant time period contain references to how

well Mr. Hagstrand was doing in late 2006 and early 2007. AR 197-205. Further, Dr. Craft's

medical records from the relevant time period are devoid of any reference to knee or ankle

problems or issues, thus providing no clinical support for his conclusions in the three disputed

reports relating to such impairments. AR 197-205. Inconsistency between a doctor's report and

his own medical records provides an independent specific and legitimate reason to reject that

doctor's opinion on limitations. *Tommasetti*, 533 F.3d at 1041 (inconsistency between

assessment questionnaire and doctor's medical records); *Bayliss*, 427 F.3d at 1216 (inconsistency

between assessment report and doctor's medical records). Dr. Craft's medical records, as well as

the record evidence of daily living reports discussed above, contradict Dr. Craft's statements that

---

     [5] For example, on January 4, 2010, Mr. Hagstrand reported to Dr. Craft that he was "doing okay in general" and that his left ankle was merely "uncomfortable." AR 189.

OPINION AND ORDER, Page 19

may be considered supporting a finding of total disability in the three contested reports. Thus, the ALJ's finding that the three reports are contradicted by medical and other record evidence is supported by substantial evidence in the record.

Further, the ALJ's finding regarding the vagueness of the statements of the November 12, 2009, report is well-founded. AR 18. Dr. Craft states that Mr. Hagstrand had "significant" ankle problems for "some time." AR 191. "Some time" is a vague reference that could mean, for example, six months or four years, and it is not clear that Dr. Craft meant to include the time period before March 31, 2007 by this reference. Dr. Craft also reports that Mr. Hagstrand "has not been very active for the last number of years because of significant muscular skeletal issues." AR 191. Again, "last number of years" is vague and not necessarily inclusive of the date last insured. To the extent it is intended to encompass the late 2006-early 2007 time frame, it is contradicted by Dr. Craft's contemporaneous medical records. Dr. Craft also states that the ankle pain "is becoming quite severe," indicating that the increase in symptoms is a recent problem. Thus, the ALJ's findings related to the November 12, 2009 report are supported by substantial evidence in the record.

The ALJ's finding that the January 29, 2010, letter report appears to discuss Mr. Hagstrand's symptoms as of that date and not as of the date last insured is also well-founded. Dr. Craft states that the ankle pain "has become such that [Mr. Hagstrand] has a very hard time getting around." AR 188. Dr. Craft also discusses Mr. Hagstrand's limitations in the present tense. Nothing in the letter indicates that Dr. Craft is opining about Mr. Hagstrand's symptoms and limitations during the relevant time period.

The ALJ has properly identified specific and legitimate reasons to give the three contested reports by Dr. Craft little weight—the inconsistency between Dr. Craft's reports and his medical records, the inconsistency between the reports and other record evidence, and the lack of support in the medical records. *See Tommasetti*, 533 F.3d at 1041 (conclusory responses on a questionnaire that are inconsistent with the physician's medical records may be rejected); *Bayliss*, 427 F.3d at 1216 ("[A]n ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings.").

## C. ALJ's RFC Formulation

Mr. Hagstrand also argues that in formulating his RFC, the ALJ failed to follow SSR 96-8p, which "requires" that the ALJ perform a function-by-function analysis. Pl.'s Br. at 9-10. SSR 96-8p is a policy interpretation that explains that the RFC assessment ordinarily must identify functional limitations and assess the claimant's "work-related abilities on a function-by-function basis." SSR 96-8p(4), *available at* 1996 WL 374184. SSRs are binding on the Social Security Administration, but do not have the force of law and are not binding on courts. *See Holohan v. Massanari*, 246 F.3d 1199, 1202 n.1 (9th Cir. 2001). They are, however, entitled to some deference because they represent the Commissioner's interpretation of the agency's regulations. *Id.* The "RFC assessment considers only functional limitations and restrictions that result from an individual's *medically determinable* impairment or combination of impairments, including the impact of any related symptoms." SSR 96-8p(2) (emphasis added); *see also* 42 U.S.C. § 423(d)(3); 20 C.F.R. § 404.1528(b)-(c). The ALJ does not need to prepare "a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record." *Bayliss*, 427 F.3d at 1217.

Here, in his assessment of Mr. Hagstrand's RFC, the ALJ thoroughly addressed the medical record, including medical findings and opinions. He adequately discussed the reasons underlying his RFC assessment, and his RFC assessment is consistent with the medical records. The ALJ addressed and resolved conflicts and ambiguities in the medical record and other record evidence. This is sufficient to meet the requirements of SSR 96-8p. *Id.*; *see also Sweeney-Emanuel v. Astrue*, Civil No. 3:11-cv-00962-JE, 2012 WL 5996932, at *15 (D. Or. Nov. 1, 2012). The Court finds the ALJ properly weighed the evidence, gave sufficient justification for his findings regarding Mr. Hagstrand's functional abilities, and that there is substantial evidence in the record supporting the ALJ's conclusions.

## CONCLUSION

The ALJ provided legally sufficient reasons for giving little weight to certain opinions of Dr. Craft, for discrediting certain testimony of Mr. Hagstrand, and in formulating his RFC. The Commissioner's decision that Mr. Hagstrand is not disabled is AFFIRMED.

DATED this 30th day of April, 2013.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge

OPINION AND ORDER, Page 22